# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AARON EDMONDS TYSON,** | : | Civil No. 3:13-cv-2609 |
| | : | |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **BARRY SMITH,** *et al.*, | : | |
| | : | |
| **Respondents** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Petitioner Aaron Edmonds Tyson ("Petitioner" or "Tyson"), a state inmate currently confined at the State Correctional Institution at Houtzdale, Pennsylvania, files the instant petition (Doc. 1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from two convictions of murder in the first degree, as an accomplice, obtained in criminal case 45-CR-817-2003, in the Court of Common Pleas of Monroe County, Pennsylvania. The petition is presently ripe for disposition. For the reasons set forth below, the petition will be denied.

## I.    Federal Court Procedural History

Tyson accompanied his petition, initially filed on October 22, 2013, with a motion to stay and hold his petition in abeyance so that he may complete exhaustion of his available state court remedies. (Doc. 2). Respondents were directed to respond to the petition and to Tyson's motion to stay. Following full briefing on the matter, on

February 28, 2014, the Court issued an Order (Doc. 15) granting the stay and administratively closing the case.  The case was reopened in 2014 (Doc. 19) only to be closed again at Tyson's request to present new evidence to the state court. (Docs. 28, 31). In October 2017, Tyson, through counsel, sought to "reactivate" his petition and to afford him additional time to amend his petition.  (Doc. 34).  Tyson did not amend the petition but, rather, submitted a brief (Doc. 39) in support of the petition on January 30, 2018. Following several extensions of time, on May 8, 2018, Respondents filed a Response (Doc. 45) and Exhibits (Docs. 45-1 – 45-30).  Tyson filed a reply brief (Doc. 47) on May 25, 2018.

## II.  <u>State Court Background</u>

The facts underlying Tyson's murder convictions are contained in the February 1, 2013 decision of the Superior Court of Pennsylvania affirming the denial of his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA.C.S.A. §§ 9541-9546. (Doc. 45-10).  The facts are as follows:

> On April 24, 2002, [Tyson], Otis Powell ("Powell") and Kasine George ("George") [drove to a Stroudsburg, Pennsylvania crack house that they controlled.  [Tyson] left the car in order to resupply the house with drugs. When [Tyson] returned to the vehicle, Tyson] stated that two white boys had just pulled a gun on him.  George described Tyson as angry at that time. [Tyson], who was at that point a passenger in the car, took a [nine-millimeter] handgun from the center console.  [[Tyson] then] racked the slide of the gun, thus arming it.  [Tyson] told Powell, who was driving, to pull out from the location where the vehicle was parked.

> [Tyson] pointed to a van and indicated [that] it was being driven by the two who had pulled a gun on him.  With Powell driving, the three followed the

2

van to a club. When the two white men entered that club, Powell gave George a knife [and directed] him to puncture the tires on the van. George did so to at least one of the tires. When George returned to the car, [Tyson] was in the driver's seat. Powell was now a passenger and he asked [Tyson] for the gun. After five or ten minutes, the two white men exited the bar, entered the van and left the location.

With [Tyson] now driving, the three again followed the van. [The van] eventually stopped due to the flat tire. At that point, [Tyson] and his two companions were going to exit the car, but Powell told the other two to wait. Powell then walked to the van. As he did so, [Tyson] backed the car to a point where he and George could see what was transpiring [around] the van. At that point, Powell shot [the] two occupants [of the van], Danial and Keith Fotiathis. … [Powell] then ran back to the car. Powell, George[,] and [Tyson] left the scene [with [Tyson] driving] the vehicle. The three discussed whether they should go to New York[,] but eventually decided to return to their nearby home.

[Daniel Fotiathis] was shot in the neck, the lower right chest[,] and the lower right back. Gunshots struck [Keith Fotiathis] in the lower right back, [the] right elbow[, and the] right wrist. Trial testimony established multiple gunshot wounds as the causes of death for the victims. The manner of each death was homicide. Police found eight shell casings from a [nine-millimeter handgun] at the scene.

George was later arrested on drug charges. Thereafter, [George] provided information to authorities regarding the instant case. [Tyson] was eventually arrested and charged with the homicide of both victims.

Commonwealth v. Tyson, 947 A.2d 834 (Pa. Super. 2008)(unpublished memorandum) at 6-8, appeal denied, 989 A.2d 917 (Pa. 2009).

(Doc. 45-10, pp. 1, 2) ("Appellant" in original substituted with "Tyson").

Tyson, represented by trial counsel, Attorney Brian Gaglione, proceed to a jury trial on May 3, 2006. (Id. at 3). The trial concluded on May 9, 2006. (Id.) The jury found him guilty of two counts of murder in the first degree, as an accomplice, in the

murders of Daniel and Keith Fotiathis; on July 17, 2006, the trial court sentenced him to the mandatory term of life in prison without the possibility of parole. (Id.)

He filed a timely post-sentence motion and raised a number of claims, including claims that his trial counsel rendered ineffective assistance of counsel. (Id.) "Following [Tyson's] trial, [his] trial counsel resigned from his position as a special public defender. As a result, prior to [] sentencing, [he] received new appointed counsel [,David W. Skutnik]. See Trial Court Order, 6/15/06, at 1." (Id. at 3, n 1). After the trial court considered, and rejected, all of Tyson's claims on the merits, he filed a timely notice of appeal to the Pennsylvania Superior Court raising the following issues: "(1) whether there was sufficient evidence to support the convictions for first degree murder; (2) whether the trial court erred by allowing the Commonwealth to introduce evidence showing that [Tyson's] coactor shot the victims even though the cofactor had been acquitted of the shootings; (3) whether the trial court erred in refusing to allow [Tyson] to introduce evidence that his coactor had been acquitted; (4) whether the trial court erred in not granting a mistrial or in not dismissing a certain juror after the juror had contact with a victim's wife; (5) whether the trial court erred in not recusing itself after presiding over the acquittal of the coactor; (6) whether the Commonwealth committed prosecutorial misconduct during its closing argument; and (7) whether trial counsel was ineffective in numerous ways." (Doc. 12-4, pp. 1, 2). The Superior Court found no merit to Tyson's assertions of error. (Doc. 12-4). Further, "in accordance with Commonwealth v. Grant,

813 A.2d 726 (Pa. 2002), [the court] dismissed [Tyson's] ineffective assistance of counsel claims without prejudice so that [he] could raise the issues within the context of a post-conviction collateral relief proceeding." (Doc. 45-10, p. 3). The court affirmed Tyson's judgment of sentence and, on February 23, 2010, the Supreme Court of Pennsylvania denied his petition for allowance of appeal. (Id. at 3, 4, citing Commonwealth v. Tyson, 947 A.2d 834 (Pa. Super. 2008) (unpublished memorandum) at 8-18, *appeal denied*, 989 A.2d 917 (Pa. 2009)).

As detailed below, Tyson then pursued state court collateral relief:

On November 19, 2010, [Tyson] filed a timely, *pro se* PCRA petition. Following the appointment of counsel, [Michael A. Ventrella] counsel filed an amended PCRA petition and claimed that [Tyson's] trial counsel was ineffective for, among other things: 1) "fail[ing] to request a jury instruction which specifically instructed the jury that[, in order to find [him] guilty of being an accomplice to first-degree murder, the jury must find that [he]] had [the] specific intent to commit first [-] degree murder;" 2) failing to object to "the Commonwealth's purported [trial] theory[,] that the motive for the shooting of the Fotiathis brothers was because they 'interrupted' the alleged 'drug ring;'" 3) failing to timely and properly present "the alibi witnesses;" 4) failing to present Omar Powell as a witness; 5) failing to object to the jury array; 6) failing to object to the Commonwealth's closing argument; and 7) failing to object to "the introduction of a photograph of the victim and his daughter." [Tyson's] Amended PCRA Petition, 3/31/11, at 1-4.

The PCRA court conducted an evidentiary hearing and heard testimony from [Tyson], [Tyson's] trial counsel, [Tyson's] direct appeal counsel, and a purported witness named Omar Powell. N.T. PCRA Hearing, 10/4/11, at 1-55.

On February 1, 2012, the PCRA court entered an order denying [Tyson's] PCRA petition and, on March 22, 2012, the PCRA court issued a comprehensive 62-page opinion, discussing the reasons why it denied [Tyson] post-conviction collateral relief. PCRA Court Opinion, 3/22/12, at

1-62.  Moreover, after receiving [Tyson's] court-ordered statement of errors complained of on appeal.  The PCRA Court authored another 18-page opinion, further discussing why [Tyson's] claims were meritless. [footnote omitted].  PCRA Court Opinion, 4/17/12, at 1-18.

[Tyson], [represented by Attorney Bradley Warren Weidenbaum] filed a timely notice of appeal and now raises the following claims to this Court:

[1.]  It was ineffective assistance of counsel to fail to request a jury instruction concerning intent to commit first[-]degree murder.

[2.] It was ineffective assistance of counsel to allow the Commonwealth to introduce evidence of drug dealing when such evidence was irrelevant and highly prejudicial.

[3.] It was ineffective assistance of counsel to fail to timely and properly present, serve notice of, and investigate alibi witnesses.

[4.]  It was ineffective assistance of counsel to not present the witness whose testimony provided a key reason why [Tyson's] codefendant was acquitted.

[5.]  It was ineffective assistance to fail to object to the jury array.

[6.] It was ineffective assistance of counsel to fail to object to the Commonwealth's closing argument which attributed a statement to [Tyson] that he never made.

[7.] It was ineffective assistance of counsel to fail to object to prejudicial photographs as evidence.

[Tyson's] Brief at 3.

(Doc. 45-10, pp. 4-6 (content of footnotes 2, 3 omitted); Doc. 12-6; Doc. 12-9).  On

February 1, 2013, in affirming the denial of PCRA relief, the Superior Court addressed

the first, second and fourth claims on the merits, but deemed the third, fifth, sixth and seventh claims waived.  (Id. at pp. 8-16).

As set forth *supra*, on October 22, 2013, Tyson filed his habeas petition in federal court, which this Court stayed to afford Tyson the opportunity to pursue his second PCRA petition, which he had filed in state court on September 26, 2013.  (Doc. 39, p. 14).  The PCRA court denied the second PCRA as untimely.  (Id. at 15).  The Superior Court affirmed that decision.  (Id. citing Commonwealth v. Tyson, 3176 EDA 2013 (Pa. Super. Ct., July 16, 2014).

Tyson filed a third PCRA in May 2016, which the PCRA court also denied as untimely.  (Id. at 15).  The Superior Court affirmed the denial.  (Id. citing Commonwealth v. Tyson, 2188 EDA 2016 (Pa.Super.Ct., Mar. 22, 2017)).  Thereafter, the Pennsylvania Supreme Court denied leave to appeal.  (Id. citing Commonwealth v. Tyson, 317 MAL 2017 (Pa. Aug. 28, 2017)).

## III.   Issues Presented for Federal Review

Tyson presents the following issues for our review:

I.      The trial court violated the due process clause of the Fourteenth Amendment when it failed to instruct the jury that in order to convict Mr. Tyson of First Degree Murder as an accomplice, the Commonwealth was required to prove beyond a reasonable doubt that he had specific intent to kill; trial counsel ineffectively failed to object or correct this plainly erroneous instruction.

II.     Trial counsel ineffectively failed to object to the admission of overwhelming amounts of propensity evidence showing that Petitioner was a violent drug dealer; some of the evidence was objected to, [h]owever, the

trial court permitted it. In toto, Petitioner [sic] right to due process of law was violated.

III. Counsel ineffectively failed to present the testimony of witnesses that were presented in the Otis Powell trial; said witnesses would have established that Otis Powell was not present at the scene of the crime and would therefore have challenged the veracity of Kasine's [sic] George's testimony that Petitioner and Powell were involved in the murders.

IV. Trial counsel ineffectively failed to present the testimony of two witnesses who would have presented evidence the Kasine George admitted that he committed the murders.

V. Trial counsel ineffectively failed to investigate and present Petitioner's alibi, and other exculpatory witnesses, and failed to file a proper notice of alibi, that resulted in the trial court striking it.

(Doc. 39, pp. 27-72).

## IV. <u>Discussion</u>

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498-99 (1973). Tyson's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). 28 U.S.C. § 2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts
of the State;

... 

(d) An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim—

(1) resulted in a decision that was contrary to or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court
proceeding.

28 U.S.C. § 2254. Section 2254 clearly sets limits on the power of a federal court to

grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v.

Pinholster, 536 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir.

2014). A federal court may consider a habeas petition filed by a state prisoner only "on

the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which

violates "the Constitution or laws or treaties of the United States," § 2254 places a high

threshold on the courts. Additionally, relief cannot be granted unless all available state

remedies have been exhausted, or there is an absence of available state corrective

process, or circumstances exist that render such process ineffective to protect the rights of

the applicant. See 28 U.S.C. § 2254(b)(1).

### A. Exhaustion and Procedural Default

Habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. 28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); see also Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner has exhausted a federal claim only if he or she presented the "substantial equivalent" of the claim to the state court. Picard, 404 U.S. at 278. To satisfy this requirement, a petitioner must "fairly present" his federal claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." Robinson v. Beard, 762 F.3d 316, 328 (3d Cir. 2014); see

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

1.     Due Process Claims

In Ground I, Tyson includes a claim that the trial court violated the due process clause of the Fourteenth Amendment when it failed to instruct the jury that in order to convict Tyson of first-degree murder as an accomplice, the Commonwealth was required to prove beyond a reasonable doubt that he had a specific intent to kill. (Doc. 39, p. 27). Tyson argues that the claim is fully exhausted because the state court considered the propriety of the jury instruction in the context of his ineffective assistance of trial counsel claim in his initial PCRA proceedings. Respondents disagree and argue that the state courts' consideration of the jury instructions in the context of an ineffective assistance of counsel claim does not constitute fair presentation of the due process claim. They urge the Court to conclude that the claim is procedurally defaulted. (Doc. 45, pp. 7-9).

The case of Mathias v. Superintendent Frackville SCI, 876 F.3d 462, 479 (3d Cir. 2017), *cert. denied* sub nom. Mathias v. Brittain, 138 S. Ct. 1707 (2018), is keenly instructive. In considering whether Mathias's due process claim challenging a first-degree murder instruction was fairly presented for purposes of exhaustion, the Third Circuit stated as follows:

> Here, although [Mathias's] pro se brief mentioned only a claim of ineffective assistance in the headers to this argument, Mathias expressly argued in the text of his brief before the Superior Court that the first-degree murder instruction itself violated the Due Process Clause and cited to the Fourteenth

Amendment of the United States Constitution and to relevant United States Supreme Court cases, including Francis [v. Franklin, 471 U.S. 307 (1985)], to support that argument. Under these circumstances, and recognizing, as we must, that pro se petitions are to be construed liberally, Rainey v. Varner, 603 F.3d 189, 198 (3d Cir. 2010); Commonwealth v. Eller, 569 Pa. 622, 807 A.2d 838, 845 (Pa. 2002), we are satisfied that Mathias did fairly present his due process claim to the Superior Court and that the Superior Court rejected that claim on the merits—albeit within its discussion of the ineffective-assistance-of-counsel claim and based on state cases that incorporated the federal standard, See Picard v. Connor, 404 U.S. 270, 277–78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

Mathias 876 F.3d at 480 (footnote omitted).[1]

Similarly, in his initial PCRA proceedings and his PCRA appellate brief, Tyson argued that the defective nature of the jury instructions denied him his right to a fair trial as guaranteed under the Fourteenth Amendment and cites to the case of Baker v. Horn, 383 F. Supp. 2d 720, 771 (2005).   (Doc. 12-9, pp. 5, 23; Doc. 45-6, p. 2).  And, in considering the PCRA appeal, the Superior Court discussed the jury instructions at length, albeit in the context of its discussion of the ineffective assistance of counsel claim. Thus, the Court is satisfied that Tyson, like Mathias, fairly presented his due process claim to the Superior Court and that the Superior Court rejected the claim on the

---

[1] In a footnote clarifying the limited nature of this holding, the Third Circuit states: "To be clear, we do not hold today that, simply because a petitioner brings a claim of ineffective assistance of counsel or a state court adjudicates that claim, every claim counsel is allegedly deficient for failing to raise necessarily has been fairly presented to the state court as a federal claim. Indeed, that would effect a novel, gaping, and unwarranted expansion of federal habeas review, particularly as petitioners may discuss and state courts may analyze the alleged deficiency exclusively in terms of state law. . .  We hold only that where, as here, a pro se petitioner has expressly identified the claim that counsel allegedly failed to raise as a federal constitutional claim and has briefed the merits of that claim by citing to federal cases, the claim has been properly exhausted." Id.

merits.  Consequently, we will consider the merits of the claim in accordance with the deferential AEDPA standard.

In Ground II, Tyson asserts that the trial court's admission of prior bad act evidence violated his due process rights.  Respondents also argue that this claim is procedurally defaulted.  Unlike Ground I, Tyson concedes that the due process argument in this ground is, in fact, procedurally defaulted because it was not presented to the state courts. (Doc. 39, pp. 54-57; Doc. 47, p. 10).  He argues, however, that "he can overcome the default of all or portions of each of those claims via Martinez v. Ryan." (Doc. 48, p. 3).  Specifically, he argues that "[a]s to the arguably defaulted grounds in this litigation, owing to the ineffective assistance of initial post-conviction counsel, Mr. Tyson has pled "cause" to overcome the default of these claims…." (Id. at 5).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, [as is the case here,] the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'  28 U.S.C. § 2254(b).  In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.  See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."  McCandless, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.  See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

The Martinez v. Ryan, 566 U.S. 1 (2010) case recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default.  Specifically, Martinez holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9, 132 S.Ct. 1309. To successfully invoke the Martinez exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," id. at 14, 132 S.Ct. 1309; and that petitioner had "no counsel " or "ineffective" counsel during the initial phase of the state collateral review proceeding. Id. at 17, 132 S.Ct. 1309; see also Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014).

With respect to the due process claim contained in Ground II, because Martinez applies only to defaulted claims of ineffective assistance of trial counsel, Tyson's argument that PCRA counsel's failure to raise a due process claim due to trial court error

fails.  See Davila v. Davis, —— U.S. ——, 137 S.Ct. 2058, 2065 (2017) (declining to

extend Martinez to defaulted claims of ineffective assistance of appellate counsel);

Murray v. Diguglielmo, No. 09-4960, 2016 WL 3476255, at *4 (E.D. Pa. June 27, 2016)

("These claims do not involve ineffective assistance of [trial] counsel. Martinez does not

apply.").  The procedural default of this claim renders federal review unavailable.

### 2.    Ineffective Assistance of Counsel Claims

In Ground II, Tyson also seeks to excuse the procedural default of the portion of

his ineffective assistance of counsel claim concerning the admission of evidence through

means other than the testimony of Detective Wolbert.  Review of the Superior Court

opinion reveals that the state court considered the whole of the introduction of evidence

of drug dealing and did not limit its analysis to Detective Wolbert's testimony.

Consequently, we consider the issue of counsel's ineffective assistance of counsel with

regard to allowing the Commonwealth to introduce evidence of drug dealing when the

evidence was irrelevant and highly prejudicial, to be fairly presented and exhausted.  We

will review this issue, *infra*, as presented to the state courts and adjudicated on the merits,

to wit, "trial counsel rendered ineffective assistance by 'allow[ing] the Commonwealth to

introduce evidence of [Tyson's] drug dealing.' " (Doc. 45-10, quoting Tyson's appellate

brief).

In his Third, Fourth, and Fifth Grounds, Tyson contends that trial counsel was

ineffective for failing to present testimony of various exculpatory and alibi witnesses,

including Omar Powell, and for filing an untimely notice of alibi witnesses. (Doc. 39, pp. 62-72). Tyson claims that "[a] claim of ineffectiveness related to trial counsel's failure to call Otis Powell and his 'clan' was raised in his initial PCRA proceedings." (Doc. 39, p. 64). He indicates that trial counsel testified as to this issue at the PCRA hearing, but there was no ruling and that that "[i]nitial PCRA counsel ineffectively failed to correct this testimony and point out the absence of a court ruling on this point." (Id.) Tyson argues that, to the extent that there is any procedural default, it is due to the ineffectiveness of PCRA counsel, Attorney Ventrella, and, therefore, he "overcomes the ostensible default via Martinez." (Doc. 39, pp. 64-68, 71; Doc. 47, pp. 12, 13).

The Superior Court stated as follows:

Within [Tyson's] brief to this Court, [Tyson] listed a number of other "possible and important witnesses" that, [Tyson] contends, could have been called at trial. [Tyson's] Brief at 27. Yet, with the exception of Omar Powell, [Tyson] has not explained why counsel was ineffective for failing to call the listed witness. See id. Therefore, [Tyson] has only preserved the claim that counsel was ineffective for failing to call Omar Powell as a witness. See Commonwealth v. Clayton, 816 A.2d 217, 221 (Pa. 2002) ("it is a well-settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal"). Further, under this heading, [Tyson] claims – in passing – that trial counsel was ineffective for filing an untimely notice of alibi witnesses. [Tyson's] Brief at 26. This claim is completely undeveloped and, thus, waived. Clayton, 816 A.2d at 221.

(Doc. 45-10, p 15, n 5). With the exception of the claim raised in Ground IV, that counsel was ineffective for failing to call Omar Powell as a witness, all of the claims contained in Grounds III, IV and V were deemed waived pursuant to a state rule governing appellate jurisprudence. A state rule is "adequate" for procedural default

16

purposes if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." Szuchon v. Lehman, 273 F.3d 299, 327 (3d Cir. 2001). These requirements ensure that "federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule," and that review is foreclosed by "what may honestly be called 'rules' ... of general applicability[,] rather than by whim or prejudice against a claim or claimant." Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (quoting Bronshtein v. Horn, 404 F.3d 700, 707 (3d Cir. 2005)).

There is no dispute that the waiver rule was firmly established, readily ascertainable, and regularly followed at the time of the default. The record demonstrates that Attorney Ventrella presented these issues in the initial PCRA proceedings. Contrary to Tyson's assertion, the procedural default of these claims is not attributable to PCRA counsel. Rather, it is directly attributable to the failure of PCRA appellate counsel, Attorney Weidenbaum, to adequately develop and preserve the issues for appellate review. Because Martinez only applies when the petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding, it does not provide cause to overcome the default of Grounds III, IV and V. Consequently, there is no basis on which to excuse his procedural default of these claims. With the exception of the ineffective assistance claim asserting the failure to call Omar Powell as a witness in Ground IV, which will be addressed below, federal review is precluded as to Grounds III, IV and V.

**B.      Claims Adjudicated on the Merits by the State Courts**

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt."  Cullen, 563 U.S. at 181(internal quotation marks and citation omitted).  The burden is on Tyson to prove entitlement to the writ.  Id.

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  "[A] state court decision

reflects an 'unreasonable application of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet' because it was 'meant to be.' [Harrison v.] Richter, 562 U.S. 86, [ ] 102, 131 S.Ct. 770. As the Supreme Court has cautioned, an 'unreasonable application of federal law is different from an incorrect application of federal law,' Richter, 562 U.S. at 101, 131 S.Ct. 770 (quoting Williams, 529 U.S. at 410, 120 S.Ct. 1495), and whether we 'conclude[ ] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a higher bar. Williams, 529 U.S. at 411, 120 S.Ct. 1495." Mathias, 876 F.3d at 476. A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

1.    <u>Ground I</u>

Tyson raises two separate challenges to the jury instructions in Ground I.  He first argues that the trial court violated the due process clause of the Fourteenth Amendment when it failed to instruct the jury, in the original instructions and in the supplemental instructions in response to the jury's question, that in order to convict him of first degree murder as an accomplice, the Commonwealth was required to prove beyond a reasonable doubt that he had to share with Powell a specific intent to kill.  (Doc. 39, pp. 27, 34, 35, 38-40).  It is his position that the instructions "permitted a finding that Mr. Tyson had a specific intent to kill if he had an intent to commit 'a' crime – any crime – and his alleged accomplice (Powell) had a specific intent to kill.  This violated due process of law because in this case, Petitioner could reasonably have been found to have intent to commit multiple offenses other than murder in the first degree."  (<u>Id.</u> at 30, 34).  In his second argument, he contends that trial counsel's failure to object to the jury instructions constituted ineffective assistance of counsel in violation of the Sixth Amendment.  (<u>Id.</u> at 27, 38-40).  He seeks relief on the grounds that the Superior Court's decisions on these claims were contrary to, and involved an unreasonable application of, Supreme Court precedent.  (<u>Id.</u> at 43).

The Superior Court addressed the claim as follows:

First, [Tyson] claims that trial counsel was ineffective for failing to object to the trial court's "accomplice liability" jury instruction. According to [Tyson] the trial court failed to instruct the jury that, "[i]n order to [convict [Tyson]] of murder in the first degree as an accomplice, the Commonwealth [was] required to show that [Tyson] had the specific intent to commit first[-]degree murder." [Tyson's] Brief at 8. [Tyson] claims that our Supreme Court's opinion in Commonwealth v. Huffman, 638 A.2d 961 (Pa. 1994) [content of footnote follows] is "exactly on point" and demands that he receive a new trial. [Tyson's] Brief at 8. We disagree. [Our Supreme Court has since partially overruled Huffman. Within both Commonwealth v. Daniels, 963 A.2d 409, 429 (Pa. 2009) and Commonwealth v. Maisonet, 31 A.3d 689, 694 n.2 (Pa. 2011), our Supreme Court recognized that Huffman erroneously failed to view the trial court's jury instruction as a whole. See Maisonet, 31 A.3d at 694 n. 2 (citing Daniels for the proposition that the high Court "has since effectively overruled Huffman").]

Our Supreme Court has held:

It is well-settled that when reviewing the adequacy of a jury instruction, we must consider the charge in its entirety to determine if it is fair and complete. The trial court has broad discretion in phrasing the charge and the instruction will not be found in error if, taken as a whole, it adequately and accurately set forth the applicable law.

Daniels, 963 A.2d at 430 (internal citation omitted).

Before a jury may find a defendant guilty of first-degree murder as an accomplice, the jury must find – beyond a reasonable doubt – that the defendant possessed a specific intent to kill. 18 Pa.C.S.A. § 306(d); 18 Pa.C.S.A. § 2502(a); Commonwealth v. Koehler, 36 A.3d 121, 155 (Pa. 2012). Thus, in Huffman, our Supreme Court held that it was erroneous for a trial court to instruct the jury "that they may find an accomplice guilty of murder in the first degree even if he did not have the specific intent to kill." Huffman, 638 A.2d at 962. As the PCRA court has thoroughly explained, however, the trial court's jury instructions in this case – when considered as a whole – "adequately and accurately set forth the applicable law" regarding accomplice liability. Daniels, 963 A.2d at 430. Moreover, the instructions indeed informed the jury that, to convict [Tyson] of first-degree murder as

an accomplice, the jury was required to find that [Tyson] independently possessed the specific intent to kill. As the PCRA court explained:

The record reflects that the trial [court] instructed the jury on murder [in] the first degree . . . [and that this instruction] included a definition of specific intent. The trial [court] also instructed the jury on accomplice liability as follows:

You may find [Tyson] guilty of the crime without finding that he personally performed the acts required for the commission of that crime. [Tyson] is guilty of a crime if he is an accomplice of another person who commits the crime. He is an accomplice if with the intent to promote or facilitate the commission of the crime[,] he encourages, requests or commands the other person to commit it or agrees or aids or agrees to aid or attempts to aid the other person in planning, organizing, [or] committing it.

You may find [Tyson] guilty of a crime on the theory that he was an accomplice as long as you are satisfied beyond a reasonable doubt that the crime was committed [and] that [Tyson] was an accomplice of the person who actually committed the crime. And it does not matter whether the person who you believe committed the crime has been convicted of a different crime or different degree of the crime or has immunity from prosecution or conviction.

[N.T. Trial, 5/9/06, at 694.]

The trial transcript further reflects that during deliberations, the jury returned to the courtroom and asked for clarification on the difference between first and third degree murder. The trial [court] responded by restating the elements that must be established for first degree murder, third degree murder and accomplice liability. After restating the elements of first degree murder, the [trial court repeated and clarified] the definition [] of specific intent…. The [trial court] also instructed the jury that: "in this particular case because there is a charge of an accomplice almost by definition it encompasses the concept of first degree murder by its very definition, an accomplice with the planning and the coordination if you, in fact, found to be so indicate that was first degree murder."

[After reviewing these] jury instructions, as a whole, [it is apparent] that the instructions were sufficient to inform the jury that in order to find [Tyson] guilty of first degree murder as an accomplice, the Commonwealth must [have] establish[ed] beyond a reasonable doubt that [Tyson] had the shared specific intent to kill the Fotiathis [b]rothers. Furthermore, the evidence presented to the jury during the trial revealed that [Tyson's] conduct was willful, deliberate[,] and premeditated and that he actively participated in the murders by aiding the shooter, Otis Powell. [Tyson] identified the intended victims to Otis Powell and Kasine George; he told Powell to drive the car in pursuit of the victims and later drove the car himself while still following the victims; he produced the murder weapon, which he gave to Powell who used it to inflict fatal wounds to vital areas of the victims' bodies; and [,] after the shooting, he aided Powell in fleeing the scene. The actions of [Tyson] were overt and clearly showed [that [Tyson] intended to murder the victims].

PCRA Court Opinion, 4/17/12, at 6-7 (internal citations omitted).

We agree with the cogent analysis of the PCRA court and conclude that, since [Tyson's] underlying claim has no merit, [Tyson's] first ineffective assistance of counsel claim fails.

(Doc. 45-10, pp. 8-11).

We first consider the due process claim. Due process is violated when a jury instruction relieves the government of its burden of proving every element beyond a reasonable doubt. See Waddington v. Sarausad, 555 U.S. 179, 190–91 (2009); Sandstrom v. Montana, 442 U.S. 510, 521, 99 (1979). Due process review is governed by the following standards:

Even if there is some "ambiguity, inconsistency, or deficiency" in the instruction, such an error does not necessarily constitute a due process violation. Middleton, supra, at 437, 124 S.Ct. 1830. Rather, the defendant

23

must show both that the instruction was ambiguous and that there was " 'a reasonable likelihood' " that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. <u>Estelle</u>, *supra*, at 72, 112 S.Ct. 475 (quoting <u>Boyde v. California</u>, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). In making this determination, the jury instruction " 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." <u>Estelle</u>, *supra*, at 72, 112 S.Ct. 475 (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).

<u>Waddington</u>, 555 U.S. at 190–91 (rejecting a habeas petitioner's claim that an accomplice liability instruction violated due process).

In accordance with applicable Pennsylvania criminal statutes and caselaw, the Superior Court stated that "[b]efore a jury may find a defendant guilty of first-degree murder as an accomplice, the jury must find – beyond a reasonable doubt – that the defendant possessed the specific intent to kill." (Doc. 45-10, p. 8). The Superior Court evaluated the jury instructions as a whole and determined that they adequately and accurately set forth the applicable law regarding accomplice liability, and "indeed informed the jury that to convict [Tyson] of first-degree murder as an accomplice, the jury was required to find that [Tyson] independently possessed the specific intent to kill." (Id. at 9, 10). The Superior Court adopted the PCRA court's recitation of the evidence presented to the jury and concurred with the PCRA court's conclusion that "the instructions were sufficient to inform the jury that in order to find [Tyson] guilty of first degree murder as an accomplice, the Commonwealth must have establish[ed] beyond a reasonable doubt that [Tyson] had the shared specific intent to kill the Fotiathis

[b]rothers." (Id. at 10). The manner in which the Superior Court conducted its review is congruous with, and a proper and reasonable application of, the clearly established Supreme Court due process test applicable to an analysis of the constitutionality of jury instructions. See Estelle, 502 U.S. at 72. Tyson is not entitled to relief on this claim.

Nor is he entitled to relief on the ineffective assistance of counsel claim. The Superior Court applied the following standard of review to its analysis of Tyson's ineffective assistance of trial counsel claims:

> To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. §9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. §9543(a)(2)(ii).

> Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." [Commonwealth v.] Rivera, 10 A.3d [1276] at 1279. To satisfy this burden Appellant must plead and prove by a preponderance of evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

> Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." Id.

(Doc. 45-10, p. 7).

The clearly established Federal law governing ineffective assistance of counsel claims, as determined by the Supreme Court of the United States is as follows:

> Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." <u>Shelton v. Carroll</u>, 464 F.3d 423, 438 (3d Cir. 2006) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the <u>Strickland</u> test qualifies as "clearly established Federal law, as determined by the Supreme Court." <u>Williams</u>, 529 U.S. at 391, 120 S.Ct. 1495. Under <u>Strickland</u>, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Id.</u> at 688, 104 S.Ct. 2052. This review is deferential:

> > A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

> <u>Id.</u> at 689, 104 S.Ct. 2052

> Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." <u>Id.</u> at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's

deficient performance. Id. at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.

In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696, 104 S.Ct. 2052.

Rainey v. Varner, 603 F.3d 189, 197–98 (3d Cir. 2010). The Third Circuit has specifically held that the very ineffectiveness assistance of counsel test relied upon by the Superior Court in this matter is not contrary to the Supreme Court's Strickland standard. See Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

Tyson contends that trial counsel was ineffective for failing to object to the trial court's "plainly erroneous" accomplice liability jury instruction. (Doc. 39, p. 27). It is evident from the above due process analysis that the Superior Court reasonably concluded that the underlying claim challenging the constitutionality of the jury instructions had no merit. Because "counsel cannot be deemed ineffective for failing to raise a meritless claim," the Superior Court's determination that Tyson was not entitled to relief on the ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of Strickland. See Werts, 228 F.3d at 203.

2.    Ground II

The Superior Court also concluded that Tyson was not entitled to relief on his second ineffective assistance of counsel claim because the underlying claim, "that his trial counsel rendered ineffective assistance by 'allow[ing] the Commonwealth to introduce evidence of [Tyson's] drug dealing.' [Tyson's] Brief at 24[,]" had no merit. (Doc. 45-10, pp. 6, 11). In citing to state law, the Superior Court recognized the broad latitude and discretion afforded trial judges in determining the admissibility of evidence and observed that such determinations would not be disturbed absent an abuse of discretion. (Id. at 11). The court opined that under Rule 404(b) of the Pennsylvania Rules of Evidence, and according to Pennsylvania case law, the other act evidence was admissible because, as explained by the trial court, it was "not used to show his propensity for committing bad acts, but rather the bad acts (*i.e.* his drug dealing) were

part of a chain or sequence of events that formed the history of the case and were part of its natural development." (Id. at 12, 13, citing Trial Court Opinion, 2/15/07, at 19 (internal citations omitted)"). The court further noted "that evidence of Tyson's drug dealing was also highly relevant to explain the motive behind the shootings." (Id. at 13).

This Court cannot review the Superior Court's determination that the other act evidence was admissible as a matter of Pennsylvania law as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Further, when the state court finds the underlying state law claim meritless and thus, concludes that the petitioner's counsel was not ineffective, the federal habeas court is bound by that ruling. Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004).

### 3. Ground IV

In his fourth ground, Tyson claims that trial counsel was ineffective for failing to present Omar Powell as a witness. Omar Powell, the brother of the alleged shooter, Otis Powell, testified at his brother's trial that, while they were incarcerated at the Pike County Jail, Kasine George admitted that he killed the Fotiathis brothers. (Doc. 39, p. 66). He testified that during the course of an argument, Kasine George told him that Otis Powell "was going for my bodies," which indicates that Kasine George was the actual killer. (Id.) Tyson claims that trial counsel was aware that Omar Powell provided this testimony because he was in possession of Otis Powell's trial transcripts and, that his failure to

present Omar Powell as a witness, constituted ineffective assistance of counsel.  (Id.)  He argues that "[i]n any event the state court finding that counsel was unaware of the existence of Omar Powell and could not have known of him, was patently unsupported by the state court record and relief is available per 28 U.S.C. § 2254(d)(2)."  (Id. at 68).

In considering the claim the Superior Court relied on Pennsylvania Supreme Court precedent which dictates that, in order "[t]o prevail on a claim of ineffectiveness for failure to call a witness, the appellant must demonstrate that:  (1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness' existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.  Commonwealth v. Malloy, 856 A.2d 767, 782 (Pa. 2004)."  (Doc. 45-10, p. 13).  In rejecting the ineffectiveness claim the court stated as follows:

> At the PCRA hearing, the PCRA court heard the testimony of Appellant, Appellant's trial counsel, and Omar Powell and concluded that trial counsel neither knew nor could have known of Omar Powell's purported testimony. Indeed, during the PCRA hearing, Appellant's trial counsel testified that he did not remember ever hearing the name of Omar Powell.  N.T. PCRA Hearing, 10/4/11, at 16.  Moreover, Omar Powell testified:  "I don't think that [Appellant's trial counsel] ever knew [about my existence] because nobody never told him as far as anything that came out of [Otis Powell's] case."  Id. at 52.  Given this testimony, we agree with the PCRA court and conclude that Appellant's ineffectiveness claim fails, as counsel neither knew nor could have known of Omar Powell's purported testimony.  Malloy, 856 A.2d at 782.

(Doc. 45-10, pp. 13, 14).

The Superior Court found support on the record for the PCRA Court's determination that trial counsel and Omar Powell, both of whom testified at the PCRA hearing, were credible and it adopted that determination of the PCRA Court on that basis. After concluding that "counsel neither knew nor could have known of Omar Powell's purported testimony" the Superior Court denied the ineffective assistance of counsel claim under <u>Commonwealth v. Malloy</u>, 856 A.2d 767, 782 (Pa. 2004). (Doc. 45-10, p. 13).

PCRA counsel, Attorney Ventrella, elicited the following testimony from Attorney Gaglione at the PCRA hearing:

Q.     Speaking of witnesses and the scene and things like that, the other jury actually was brought to the scene of the crime to see how dark it was. And how far the alley went down and whether the witness could see everything he said he could see. Why did you decide not to do that?

A.     I don't have an answer to that. I felt the focus of the case was more on the witness who placed my client there. You know. If the witness placed my client at the scene is somebody who was familiar with my client he was, according to his own testimony, in the same car as my client. According to this testimony he discussed the situation with my client prior to the actual homicide. So I mean it really was not an issue for me as to whether or not, you know, somebody was going to believe that, you know, that they saw what they saw.

If they believed this witness for the prosecution and they bought his word and they didn't just discredit him because of the fact that he was a drug dealer trying to extricate himself from his own problem, if they believed him I considered my client was probably going to go down. And if they didn't believe him that is where I was, you know, where I was basing my trial strategy.

I figured that was the best way to get my client out of this. Just to try and discredit the testimony of the many witnesses of the prosecution, the rollover of the prosecution. That is the reason.

Q.     Do you believe Omar Powell would have helped you in that regard with his testimony?

A.     Well, I actually had him subpoenaed and brought him to the trial. I was thinking possibly of putting him up there but there was really nothing of any relevance that I could not put him up there and say he was acquitted. You know, it really was not relevant. And I couldn't say that he --

Q.     Okay.

A.     -- he had indicated that he was at a party at the time. I just – I didn't think that was going to work. The judge was going to exclude it anyway.

Q.     You are talking about Otis not Omar. Otis.

A.     Whatever his name is. Yeah. I don't know.

Q.     It is Otis Powell. Otis was the one who was acquitted.

A.     Okay. That is the guy I am talking about.

Q.     And you –

A.     Is that the one you are talking about?

Q.     Not originally but we can talk about him first. You didn't call Otis for the reasons just stated, correct?

A.     Correct.

Q.     Omar. Do you remember Omar Powell?

A.     No.

Q.     Omar had testified that Kasine George had admitted to the homicides and was a witness in Otis' trial helping to get the acquittal; do you remember that?

A.     I can't remember who Kasine George is. Was he the same individual who had testified against my client?

Q.     Yes.

A.      Yes?

Q.      Yes.

A.      So can you repeat the question?  I am not exactly sure – I didn't quite follow that.

Q.      Do you remember who Omar Powell was first of all?

A.      No.

Q.      And you didn't call him as a witness obviously?

A.      No.

Q.      Did you call the corrections officer from Pike County who also testified in Otis' case?

A.      I didn't call any witnesses.

Q.      Did you call my client as a witness?

A.      I didn't call any witnesses.

Q.      Okay. And you did not call Louis Davenport as well?

A.      I think I answered.  I didn't call any witnesses.

(Doc. 45-16, pp. 13-16).

Additionally, Attorney Gaglione testified to the following when cross-examined by the assistant district attorney:

Q.      At the time of your investigation to represent Mr. Tyson did you know who Omar Powell was?

A.      Omar or Otis?

Q.      Omar.

A.      I can't remember.  I only remember one person named Powell involved in the case.  Again, we are going back six years.  I don't have the file in front of me.  I can't remember anybody other than the one Powell.

The name that sticks out in my head. And that was the gentleman who was one of the alleged co-conspirators in the case. That was the only Powell that I remember.

(Id. at 23, 24).

And Omar Powell testified at the hearing as follows:

Q.      Were you ever called to testify in Mr. Tyson's case?

A.      No.

Q.      Were you subpoenaed?

A.      No.

Q.      So you were not brought in?

A.      I don't think that Mr. Gaglione ever knew because nobody never told him as far as anything that came out of my brother's case. I don't think the prosecutor handed him over that information.

Q.      So you don't know if Mr. Gaglione even was aware of this?

A.      No.

(Id. at 52, 53).

The pertinent testimony at the PCRA hearing, which included the testimony of trial counsel, Attorney Gaglione, and Omar Powell, supports the state courts' interpretation of the PCRA hearing testimony. "The federal habeas statute provides us 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by [us].' " Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000) (quoting Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)). Given counsel's credited testimony at the PCRA hearing that nobody informed

him of the potential testimony of Omar Powell—and the absence of any evidence, apart from Tyson's conclusory statement that trial counsel possessed the trial transcript and therefore knew of Omar Powell—the finding that trial counsel neither knew nor should have known of Omar Powell was not "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." See § 2254(d)(2). Federal habeas relief is not available because the Pennsylvania courts denied a claim on the basis that counsel cannot be ineffective for failing to call a witness that counsel neither knew nor should have known of. See § 2254(d)(1); Werts, 228 F.3d at 204. There is no basis for relief on Tyson's ineffective assistance of counsel claim for failure to call Omar Powell.

## IV.     Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

<u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Tyson fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Tyson from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals.  <u>See</u> Fᴇᴅ. R. Aᴘᴘ. P. 22(b)(1).

**V.**     **<u>Conclusion</u>**

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order will enter.

**BY THE COURT:**

**<u>s/James M. Munley</u>**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

**Dated:**       February 6, 2019